IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SALVADOR SANTANA CABRERA,      )
                               )
          Petitioner,          )
                               )     1:12CV695
     v.                        )     1:09CR323-1
                               )
UNITED STATES OF AMERICA,      )
                               )
          Respondent.          )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, Jr., District Judge**

On July 5, 2012, Petitioner Salvador Santana Cabrera, a

federal prisoner, filed a motion, and a supporting memorandum,

seeking to vacate, set aside, or correct his sentence pursuant

to 28 U.S.C. § 2255 in case number 1:09CR323-1.[1] (Docs. 54, 55.)

The Government has filed a Response (Doc. 64), and Petitioner

has filed a Reply (Doc. 69). Petitioner has also filed a Motion

for Leave to Exceed Page Limit (Doc. 68). The matter is now

before the court for a ruling. See Rule 8, Rules Governing §

2255 Proceedings.

---

[1] Unless otherwise noted, citations are to this criminal
proceeding, Case No. 1:09CR323-1, and citations to Petitioner's
2255 Motion are to either the Ground number set forth in his
pre-printed form or to the CM/ECF footer number. Additionally,
the undersigned has endeavored to respond to all of the many
variations of Petitioner's claims. To the extent that any have
not been specifically discussed, they should still be denied for
essentially the reasons set out herein.

## BACKGROUND

On September 28, 2009, Petitioner was indicted by a grand jury in the Middle District of North Carolina and charged in Count One with knowingly and falsely using a social security number not assigned to him in violation of 42 U.S.C. § 408(a)(7)(B) and in Count Two with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). (Doc. 1.) Attorney George Crump ("Crump) was appointed to represent Petitioner. (Doc. 5.) After a three-day trial, Petitioner was found guilty on both counts. (12/17/09 Minute Entry; Doc. 27.) Sentencing was set and the case was subsequently reassigned to another judge of this court for sentencing. (2/26/10 Minute Entry.)

Petitioner was sentenced on May 18, 2010, in this case (1:09CR323-1) and another unrelated criminal matter (1:09CR122-1) in which Petitioner pled guilty to possession with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime. Consequently, Petitioner was sentenced to a total term of 171 months of

imprisonment.[2]  (Doc. 37.)  On June 9, 2010, Petitioner appealed.

(Doc. 33.)  Mr. Crump also represented Petitioner on appeal.  On

May 2, 2011, the United States Court of Appeals for the Fourth

Circuit affirmed his judgment and sentence.  (Docs. 49, 50.)

United States v. Cabrera, 426 Fed. App'x 204 (4th Cir. 2011).

In summary, this case arises from Petitioner's misuse of a

social security number.  "Under the Government's theory of the

case, [Petitioner] represented himself at a bank as Miguel

Santiago, applied for a loan naming Santiago as the personal

guarantor, and furnished Santiago's social security number in

conjunction with the application.  Thus, [Petitioner], with the

intent to deceive the bank, falsely represented that the social

security number was assigned to him (that is, his physical

person), when in fact it was assigned to Santiago, in order to

obtain a loan."  Id. at 205-06.

---

[2] Petitioner was sentenced to serve 87 months for his crime
of possession with intent to distribute cocaine, consecutive to
a 60-month sentence for his crime of possession of a firearm in
furtherance of a drug trafficking crime, and consecutive to 24
months of imprisonment for his crime of aggravated identity
theft.  (Doc. 37.)  Petitioner was also sentenced to serve 60
months for misusing a social security number; however, this was
to be served concurrently with the possession with intent to
distribute cocaine charge.  (Id.)

## Petitioner's Claims

Petitioner raises five claims in his section 2255 motion. First, in Ground One, Petitioner alleges "[c]ounsel was ineffective at trial for not asking for a mistrial and for appropriate curative instructions when a [Government] witness gave unsolicited, highly prejudicial testimony regarding Defendant's previous incarceration on unrelated charges." (Motion to Vacate (Doc. 54) at 4.)[3] Second, in Ground Two, Petitioner contends "[c]ounsel was ineffective during the direct appeal phase for not challenging on appeal the [Government's] misconduct and the district court's errors regarding the improper testimony of the [Government's] witness concerning Defendant's incarceration." (Id. at 5.)

In Ground Three, Petitioner alleges that counsel was ineffective "before and during trial for failure to investigate, develop and present available evidence that persons other than the Defendant were responsible for the misuse of the social security number at issue." (Id. at 7.) In Ground Four, he alleges a Brady violation. (Id. at 8.) Last, Petitioner alleges that the prosecutor "knew or should have known that

---

[3] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

William Galipeau testified falsely regarding Galipeau's efforts to identify the Suntrust Bank employee that filled out and submitted the loan application." (Id. at 22.)[4] The Government, in turn, denies each of these claims.

## DISCUSSION

The first three claims, and part of the fourth claim, are based on alleged ineffective assistance of counsel during trial and appeal. To prove ineffective assistance of counsel generally, a petitioner must establish: (1) that his attorney's performance fell below a reasonable standard for defense attorneys, and (2) that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). With respect to the first prong, the petitioner bears the burden of affirmatively showing that his counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688-89; Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, the petitioner must show that prejudice resulted from the deficient performance, that is, that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding

---

[4] Petitioner has also filed a section 2255 motion in case number 1:09CR122-1 (Doc. 32), which the court has addressed in a separate order.

would have been different.  <u>Strickland</u>, 466 U.S. at 694.  A

reasonable probability is one "sufficient to undermine

confidence in the outcome."  <u>Spencer</u>, 18 F.3d at 233 (citing

<u>Strickland</u>, 466 U.S. at 694).  To obtain a hearing or any form

of relief, a habeas petitioner must come forward with some

evidence that the claim might have merit.  <u>See</u> <u>Nickerson v. Lee</u>,

971 F.2d 1125, 1136 (4th Cir. 1992), <u>abrog'n on other grounds</u>

<u>recog'd, Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999).

Claims of ineffective assistance of counsel on appeal are

also judged using the <u>Strickland</u> test.  <u>See</u> <u>Lawrence v. Branker</u>,

517 F.3d 700, 708-09 (4th Cir. 2008).  Appellate counsel need

not raise on appeal every non-frivolous issue requested by a

defendant.  <u>Jones v. Barnes</u>, 463 U.S. 745, 752-53 (1983); <u>see</u>

<u>also</u> <u>Evans v. Thompson</u>, 881 F.2d 117, 124 (4th Cir. 1989).

Ineffective assistance of appellate counsel can be shown by

demonstrating that "counsel omitted significant and obvious

issues while pursuing issues that were clearly and significantly

weaker."  <u>Bell v. Jarvis</u>, 236 F.3d 149, 180 (4th Cir. 2000)

(citation omitted).

### **Ground One – Ineffective Assistance at Trial**

Petitioner contends counsel was ineffective for failing to

request a mistrial and for curative instructions when a

Government witness gave "unsolicited, highly prejudicial

testimony regarding Defendant's previous incarceration on unrelated charges." (Motion to Vacate (Doc. 54) at 4.) For the reasons set forth below, this argument has no merit.

At trial, the Government called Miguel Santiago to testify. (Trial Tr., Dec. 15, 2009 (Doc. 41) at 95.) Santiago testified that he was Petitioner's barber, that he had known Petitioner for seven or eight years, and that he was godfather to the oldest child. (Id. at 99-100.) Sometime during 2006, Petitioner asked Santiago to go into business with him in remodeling and building houses. Santiago invested $200,000 in the business. (Id. at 101-03.) Santiago gave a power of attorney to Petitioner; that power of attorney was apparently limited after November 30, 2006. (Id. at 105-07.) Santiago also reviewed a SunTrust loan document on which he (Santiago) was listed by name and social security number as a guarantor. (Id. at 107-08, 114-16.) Santiago testified that he did not give Petitioner authority to take out the loan or use him (Santiago) as a guarantor. (Id.) During Santiago's testimony, the following exchange occurred:

> **MR. CHUT:** Now, after this document was executed, at some point did SunTrust Bank contact you?

> **SANTIAGO:** After Mr. Santana went to prison --

> **MR. CRUMP:** Object, Your Honor, move to strike.

**THE COURT:** It will be stricken. Disregard the statement.

**MR. CHUT:** Did you receive a letter from SunTrust Bank at some point?

**SANTIAGO:** After Mr. Santana went to jail --

**MR. CRUMP:** Object, Your Honor, move to strike.

**THE COURT:** Sustained. It will be stricken.[5]

(Id. at 112.)

Petitioner contends counsel was ineffective for failing to move for a mistrial in response to the improper testimony. As an initial matter, the court notes that Rule 404(b) of the Federal Rules of Evidence provides, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b)(West 2011).[6]

---

[5] As demonstrated above, any argument that the court failed to strike from the record these statements, or that Petitioner was somehow prejudiced by any such failure, is clearly contradicted by the record.

[6] The language of Rule 404 was slightly modified in 2011, with effective date December 1, 2011. Because the trial occurred in December 2009, the version prior to modification was in effect.

The court notes further that the United States Supreme Court has identified only a few basic trial rights that belong exclusively to the defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983). Notably absent from this list is the decision whether to request a mistrial, and the Fourth Circuit has held that "decisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client." United States v. Chapman, 593 F.3d 365, 367-68 (4th Cir. 2010). Additionally, it is left to the discretion of the district court whether to grant a mistrial. United States v. Johnson, 587 F.3d 625, 631 (4th Cir. 2009). Before granting a mistrial, the court should consider whether a less drastic alternative, such as a curative instruction, would suffice to address the issue. United States v. Martin, 756 F.2d 323, 328 (4th Cir. 1985).

Here, the testimony set forth above falls far short of that required for a mistrial. Despite Petitioner's argument to the contrary, nothing about the questions asked by the Government suggests the response was sought purposefully. Even assuming that the testimony could be construed as a statement of "other

crimes," the instructions and the objection were sufficient to cure any grounds for a mistrial.[7]

Additionally, the trial court also gave preliminary instructions as follows:

> [O]bjections to questions are not evidence. . . . You should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, ignore the question. . . .
>
> . . . [T]estimony that the Court has excluded or told you to disregard is not evidence and must not be considered.

(Trial Tr., Dec. 15, 2009 (Doc. 41) at 28.) In addition to those preliminary instructions, the final instructions stated:

> As stated earlier, you must consider only the evidence I have admitted in the case. . . . If I have excluded any evidence or directed you to disregard any evidence, you must not consider such evidence.

(Jury Instructions (Doc. 26) at 2.) The final instruction also provided:

> I caution you, members of the Jury, that you are here to determine from the evidence in this case whether [Petitioner] is guilty or not guilty of the offenses with which he is charged. He is on trial

---

[7] Petitioner also contends that counsel, the prosecution, and/or the court erred by failing to "admonish the witness to refrain from answers that were non-responsive" and therefore essentially invited Santiago to repeat the offensive statement. (Motion to Vacate (Doc. 54) at 5.) However, this argument also fails to demonstrate prejudicial error. As explained, the offensive language was stricken, ordered to be disregarded, and addressed further in the jury instructions. There was no prejudicial error here.

only for the specific offenses alleged against him in
the Indictment.

(Id. at 9.)

In United States v. Murphy, the defendant sought a mistrial
upon the ground that grand jury testimony included a statement
that the defendant had spent time "in the institution."  696
F.2d 282, 287 (4th Cir. 1982).  Although in that case the
institution was not identified as prison, similarly to this
case, there was no mention of any reason why the defendant was
in the institution, and "[n]o reasonable juror . . . could have
been certain of its meaning or implication." (Id.)  The Fourth
Circuit Court of Appeals held that "this casual reference was
not so prejudicial to Murphy as to require the granting of a new
trial."  (Id.)

In this case, while Santiago did mention "prison" and
"jail," defense counsel objected, the objection was sustained,
and the testimony struck.  Sustaining the objection and striking
the testimony, particularly when considered in light of the
preliminary and final instructions as well as the strong
evidence against Petitioner, cured any harm even assuming the

brief and casual reference might have provided the jurors with

some inference of a criminal conviction.[8]

Additionally, counsel states in an affidavit he "did not

move for a curative instruction as to these two brief gratuitous

statements by Miguel Santiago because I am of the opinion it is

easier for a jury to either disregard these statements or

attribute no value to these statements if the trial court does

not keep bringing the statements to the attention of the jury by

curative instructions." (Respondent's Resp. to Mot. to Set Aside

under 28 U.S.C. § 2255 ("Respondent's Resp."), Attach. A (Doc.

---

[8] See also United States v. Morrow, 731 F.2d 233, 235 n.4
(4th Cir. 1984) ("When considered against the backdrop of the
abundant and cumulative evidence against Morrow, however, the
effect of Alsbrooks' statement [that defendant "had gotten out
of prison" some three months before the robbery] was tenuous at
best; indeed, a mere superfluity. . . . Thus, denial of a
mistrial was entirely proper."); United States v. Self, 681 F.3d
190, 199 (3rd Cir. 2012) (affirming denial of mistrial involving
brief, isolated, and unsolicited mention of the fact that
defendant was "already in jail" in response to the prosecutor's
questions, especially where there was strong evidence against
defendant and the court instructed the jury to disregard the
offensive testimony); United States v. Miller, 431 F. App'x 847,
853 (11th Cir. 2011) ("With respect to Jasmin's statement that
Miller 'had just got out of jail the day before,' the district
court did not abuse its discretion in denying Miller's motion
for a mistrial. The record reveals that the statement, when
made, was volunteered by Jasmin and not expected by the
prosecutor.  It does appear that the prosecutor attempted to
elicit a repetition of the statement when he again asked Jasmin
what he had told Miller about why Miller should not go with
Danny Glover.  While this may have been improper, the district
court prevented Jasmin from answering, sustained an objection,
and offered to give a limiting instruction to the jury.")
(citations omitted).

64-1) at 5.)  Such strategy has merit as suggested where, as here, the matter only came up incidentally, neither the witness nor the Government made any repeated reference to it, the court sustained the objection, and it promptly struck the testimony.

Under these circumstances, Petitioner has not established a meritorious basis for further remedial action by the court or defense counsel, nor has he established a basis upon which counsel could be deemed ineffective for failing to move for a mistrial.[9]  Counsel's performance was well within the wide range of professionally competent assistance.

## Ground Two — Ineffective Assistance on Appeal

Petitioner next contends counsel was ineffective during the direct appeal phase for not challenging on appeal the Government's misconduct and the district court's errors

---

[9] Petitioner also contends that Santiago made a statement in Spanish that was not translated and is not part of the record. Specifically, the statement was that Petitioner had gone to prison for drugs. (Motion to Vacate (Doc. 54) at 13, 28-29.) The trial transcript does not support this assertion and Petitioner does not meaningfully explain why these purported statements were not translated into English and included in the transcript.  In fact, Petitioner himself acknowledges that the record does not contain these purported statements.  (Id.) Petitioner's assertions are entirely unsupported (other than his self-serving affidavit) and conclusory.  Moreover, even if Petitioner's assertions were true, as explained above, Santiago's comments were stricken from the record and the jury was told not to consider them.  This part of Petitioner's claim fails — as do all of its permutations — for lack of any meaningful support.

regarding the improper testimony of the Government's witness concerning Petitioner's prior incarceration. (Motion to Vacate (Doc. 54) at 5.) As noted, this issue — or any permutation of this issue — has no merit. And, because appellate counsel cannot be constitutionally ineffective for failing to raise on appeal a meritless issue, this claim fails. If Petitioner is also arguing that counsel was ineffective for failing to withdraw from representing Petitioner on appeal so that these issues could be raised either by Petitioner himself, or by substitute counsel, that argument also fails for these same reasons.

### Ground Three — Failure to Investigate

Next, Petitioner raises a number of assertions of ineffective assistance of trial counsel based upon (1) a failure to investigate the facts underlying this case, and (2) critical tactical mistakes at trial, in that counsel failed to properly develop and present evidence that someone other than Petitioner had committed the crimes at issue. (Motion to Vacate (Doc. 54) at 7.)

Specifically, Petitioner faults counsel for reserving his opening argument and for failing to present a "blame-shifting" defense, in which counsel argued to the jury that someone besides Petitioner was responsible for the fraudulent loan

application. (Id. at 16.)  Petitioner faults counsel further for

not examining Santiago's purported bias against Petitioner

stemming from the financial losses of their former partnership.

(Id. at 17.)  He further contends that counsel did not argue

that SunTrust employee Allen Suttle, or another individual, had

falsely prepared the loan application.[10] (Id. at 18-19.)

This ground is also without merit.  Generally, defense

counsel has the authority to manage most aspects of the defense

without a defendant's consent.  Chapman, 593 F.3d at 367-68

(citing Florida v. Nixon, 543 U.S. 175, 187 (2004)). The matters

that fall within counsel's discretion "primarily involve trial

strategy and tactics, such as what evidence should be

introduced, what stipulations should be made, what objections

should be raised, and what pre-trial motions should be filed."

Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) (emphasis

added) (citation omitted).

Here, first, counsel, as a tactical judgment, chose not to

make an opening statement. In his affidavit, counsel states he

---

[10] At times, Petitioner's allegations seem to challenge the sufficiency of the evidence used to convict him.  (See, e.g., Motion to Vacate (Doc. 54) at 15.)  The Fourth Circuit Court of Appeals determined that there was sufficient evidence to convict Petitioner, Cabrera, 426 Fed. App'x at 204-05, and, consequently, Petitioner cannot reargue that issue here, Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976).  And, even if he could, the court would conclude that the evidence was sufficient.

felt that an opening simply negating what the other party's evidence would show, would be ineffective. (Respondent's Resp., Attach. A (Doc. 64-1) at 5.) Counsel was also concerned that he not forecast the testimony of defense handwriting expert Thomas Thornburg. (Id.) Counsel was concerned that if Thornburg's actual testimony varied from the forecast, Petitioner's case would suffer. (Id.) This tactical decision was not objectively unreasonable. See, e.g., Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995); Rutley v. United States, No. 12-C-841, Criminal Case No. 10-CR-176, 2012 WL 4048925, at *7 (E.D. Wis. 2012). Second, Petitioner has failed to demonstrate any likelihood that but for counsel's reservation, the results of the case would have been different.

Third, contrary to Petitioner's arguments, counsel presented a "blame-shifting" defense by presenting to the jury the testimony of Thornburg, a handwriting expert. (Trial Tr., Dec. 16, 2009 (Doc. 42) at 106-33.) Thornburg testified that it was improbable that Petitioner had signed Santiago's name to the fraudulent loan application. (Id. at 133.) Counsel thus presented evidence to the jury that he believed allowed the jury to form a reasonable doubt as to the fraudulent execution of the loan application by Petitioner, thereby suggesting someone else

executed the loan application.   (Respondent's Resp., Attach. A
(Doc. 64-1) at 2-3, 6.)

Also, counsel examined Santiago as to his business
relationship with Petitioner.[11] (Trial Tr., Dec. 16, 2009 (Doc.
42) at 12-24.) The jury was therefore well aware that Santiago
and Petitioner had a business relationship and that Santiago had
lost a substantial investment. (Id.)  The jury was able to
consider this in assessing Santiago's credibility as a witness
and was able to judge the veracity of Santiago's statement that

_____

[11] At trial, Santiago spoke Spanish and made use of an
interpreter.  If Petitioner is faulting counsel for failing to
test Santiago's ability to speak English, or to test this issue
more thoroughly at trial, any such claim must fail.  At trial,
counsel inquired in front of the jury into Santiago's ability to
speak English without the aid of an interpreter.  (Motion to
Vacate (Doc. 54) at 27; Trial Tr., Dec. 16, 2009 (Doc. 42) at
13.)

he had not taken out the loan in question, nor authorized anyone else to do so.[12]

Counsel also investigated Petitioner's assertion that a SunTrust officer named Allen Suttle was involved in the preparation of the fraudulent loan application.  Counsel states that he visited the SunTrust branch at which the loan application was executed and sought information about Suttle. (Respondent's Resp., Attach. A (Doc. 64-1) at 3.)  None of the employees at the branch were familiar with Suttle. (Id.) However, counsel ultimately found Suttle in the Winston-Salem/Greensboro area. (Id.)  He spoke with Suttle by phone and Suttle told counsel he knew nothing about the facts of the case. (Id.)

---

[12] Petitioner faults counsel for not conducting additional pre-trial investigation "and discover[ing] additional admissible evidence that Santiago harbored ill-will towards Defendant as a result of Santiago's lost investment.  Had he done so, he could have called Richard Martin and Martha Velazquez [and Marilyn Santana] to testify to Santiago's motive for lying." (Motion to Vacate (Doc. 54) at 18, 28.)  A decision to call a witness at trial is strategic and thus left to counsel.  Chapman, 593 F.3d at 369; United States v. Terry, 366 F.3d 312, 317 (2004). However, even assuming Petitioner's contention is true, and that a number of individuals could have so testified, there is no reason to believe that this would have altered the outcome of the case.  Additionally, Petitioner asserts that he "had documents that proved Santiago's denial [of responsibility for the loan] was a lie," but Petitioner does not provide these documents.  (Motion to Vacate (Doc. 54) at 19.)

At trial, no evidence was presented in regard to Suttle being somehow involved in the preparation of the fraudulent loan application.[13] Therefore, it was reasonable for counsel to conclude that he had no basis to argue that Suttle had been involved with the loan application. In fact, had counsel taken this route, he might well have been admonished by the court. For these reasons, the fact that counsel did not subpoena Suttle was also not unreasonable.

Petitioner further argues that counsel was ineffective in that he failed to subpoena bank records from SunTrust. (Motion to Vacate (Doc. 54) at 18.) These records would have allegedly shown (1) who applied for the loan, or at least that Petitioner did not apply for the loan, (2) that bank witness William Galipeau supposedly knew that Suttle, or some third party, had filled in the information on the fraudulent loan application,

_____

[13] Counsel did cross-examine Santiago as to exactly what he knew about Suttle. Santiago testified he knew Suttle, that Suttle worked in the bank, but that he did not know what position Suttle occupied at the bank. (Trial Tr., Dec. 16, 2009 (Doc. 42) at 20-21.) Additionally, while Petitioner's affidavit contains an alternative narrative of this case which implicates Suttle as being responsible for the crimes at issue, this narrative is conclusory and unsupported. (Motion to Vacate (Doc. 54) at 26-27.) Petitioner has also filed an additional conclusory and unsupported affidavit along with his Reply that sets forth additional narrative implicating others and exonerating himself in the charged crimes. (Pet'r's Reply, Attach. 1 (Doc. 69-1).) Again, such statements are conclusory, speculative, and without support, and therefore do not require further inquiry.

and (3) that Santiago harbored ill will towards Petitioner and that he received loan proceeds.  (Id. at 18; Pet'r's Reply (Doc. 69) at 17-18.)

These claims are at best speculative and fail for lack of any meaningful support.  At trial, Galipeau testified that he did not know which bank officer had taken the loan application. (Motion to Vacate (Doc. 54) at 19-20; Trial Tr., Dec. 15, 2009 (Doc. 41) at 83; Respondent's Resp., Attach. B, Ex. 01A (marked as Joint Appendix ("JA") 241-245) (Doc. 64-2).)  The actual loan documents showed a Jason McCord as the branch contact. (Respondent's Resp., Attach. B, Exs. 01A, 01B (marked as JA 245-246) (Doc. 64-2).) Petitioner merely speculates that bank documents would show that Suttle was involved in the transaction. Nor does Petitioner meaningfully address the fact that the documents list McCord as the loan contact.[14] (Id.) Additionally, as explained, the jury was well aware of Petitioner's business relationship with Santiago.  Counsel was not ineffective for failing to subpoena banks documents.

_____

[14] Petitioner asserts in his Reply that counsel should have subpoenaed McCord to explain why SunTrust was not more diligent in confirming the identity of would-be borrowers.  (Pet'r's Reply (Doc. 69) at 21.)  However, it is mere speculation that any such testimony would actually help, rather than harm, Petitioner's case.

Petitioner also argues that counsel was ineffective for not issuing subpoenas to bank employees from the branch who Petitioner believes would have testified that he did not execute the loan application. (Motion to Vacate (Doc. 54) at 19-20.) Counsel's affidavit asserts he did go to the branch as part of his investigation. (Respondent's Reply, Attach. A (Doc. 64-1) at 3.) However, he did not discover any material evidence except that no one knew Suttle. (Id.) As such there is apparently no evidence that would support subpoenaing bank employees, especially as counsel was focused on Suttle at Petitioner's direction.

Nor does Petitioner show how the result of the trial would have been different but for the failure of counsel to present the various "blame-shifting" defenses Petitioner presents in his Motion.[15] As noted, counsel did present such a defense based on the argument that someone besides Petitioner had signed the loan

---

[15] Petitioner also asserts that "[counsel] never told me I could be convicted even if we convinced the jury that the signature was not mine" and that "proof that I did not sign the loan application was a complete defense." (Pet'r's Reply, Attach. 1 (Doc. 69-1) at 5-6.) However, even assuming counsel made these statements, and assuming further they amount to objectively unreasonable misadvice, Petitioner fails to meaningfully explain how he was prejudiced. For example, Petitioner does not contend that he would have plead guilty rather than gone to trial but for these purported errors, nor does he indicate any alternative tactics counsel should have pursued at trial, other than those addressed and rejected elsewhere herein as being without merit.

application.  However, the jury rejected this defense because
strong evidence pointed to Petitioner's guilt.  First, the loan
records from SunTrust proved to the jury that Petitioner, not
Santiago, received the proceeds of the loan. (Trial Tr.,
Dec. 15, 2009 (Doc. 41) at 55-63.)  Further, Petitioner even
made a payment on the loan application.  (Id. at 60.) Second,
the jury was able to judge Santiago's credibility at trial.
Santiago testified that he had not taken the loan out, had not
authorized Petitioner to take out the loan, and had no knowledge
of the loan. (Trial Tr., Dec. 16, 2009 (Doc. 42) at 12.)
Santiago also testified that Petitioner's phone number was
listed on the loan application and that Petitioner (under the
name Santana) was listed as the loan contact. (Id. at 7-10.)
Further, Santiago testified that he could not have signed the
loan application as he was in the Dominican Republic on the day
that the loan application was signed. (Trial Tr., Dec. 15, 2009
(Doc. 41) at 117.)

Santiago's credibility was supported by the testimony of
Special Agent Don Carter of the Department of Homeland Security.
Agent Carter testified that review of the United States passport
records showed that Santiago had left the United States for the
Dominican Republic on June 12, 2007, and had not returned until
June 23, 2007. (Trial Tr., Dec. 16, 2009 (Doc. 42) at 36-37.)

Therefore, United States passport records supported Santiago's testimony that he was in the Dominican Republic on June 19, 2007, when the loan application was executed under his forged signature and using his social security number. (Respondent's Resp., Attach. B, Ex. 01A (marked as JA 245) (Doc. 64-2).)  In light of the strong evidence of his guilt, Petitioner has shown no likelihood that but for the failure of counsel to present the "blame-shifting" defense he now sets forward, there would have been a different result in the trial.  Counsel's performance was well within the wide range of professionally competent assistance.

## Ground Four - Brady

Petitioner raises purported Brady violations in his next claim.  (Motion to Vacate (Doc. 54) at 8.)  He contends that the Government failed to reveal that it had conducted finger and palm print tests on the loan application which allegedly failed to indicate Petitioner's finger or palm prints were present on the loan application. (Id.)  Petitioner bases this allegation on the fact that his finger and palm prints were taken by law enforcement following his indictment in this case. (Id.)  Petitioner takes this as evidence that the Government must have tested the loan application for finger and palm prints and not

found a match with Petitioner's prints.  (Id.)  This argument lacks merit.

Under Brady v. Maryland, 373 U.S. 83, 87 (1963), and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Kyles v. Whitley, 514 U.S. 419, 432 (1995) (citation omitted); see also Giglio v. United States, 405 U.S. 150, 154-55 (1972). Evidence is "favorable" both when it would tend to exculpate the accused and when it can be used to impeach Government witnesses. United States v. Bagley, 473 U.S. 667, 676 (1985).  However, where the prosecution fails to disclose evidence favorable to the accused, such evidence is material only where there exists a "reasonable probability" that "had the evidence been disclosed . . . , the result of the proceeding would have been different."  Kyles, 514 U.S. at 433-44 (citations omitted).

Here, the problem with Petitioner's Brady claim is that there is no evidence — merely Petitioner's unsupported allegations — that the Government tested the loan application for fingerprints. The Government asserts that Special Agent Donna James took Petitioner's palm and finger prints following his indictment pursuant to Secret Service administrative policy

and to provide for FBI records. (Respondent's Resp. (Doc. 64) at 15.) Petitioner also asserts that "After I was indicted in this case, I was transported to Alamance County Jail. When we got there, I was told that I had to let them take my palm print, which I did." (Motion to Vacate (Doc. 54) at 30.) In any event, nothing on the record suggests the finger and palm prints were made for investigatory purposes or that they were used as such. Petitioner speculates without any evidence that his fingerprinting indicates the existence of an undisclosed, and exculpatory, fingerprint examination of the loan application. This ground for relief is without merit.[16]

Petitioner further contends that the Government did not reveal to the defense that SunTrust Bank had failed to identify the loan officer who had made the loan. (Id. at 21.) Petitioner asserts this information would bolster his "blame-shifting defense." (Id.) Petitioner does not contend that the Government failed to provide the relevant loan documents, but that it did not reveal that SunTrust Bank had not determined the identity of

---

[16] Petitioner also faults counsel for not getting a "fingerprint examiner to prove that I didn't sign Miguel's name on the application." (Motion to Vacate (Doc. 54) at 27.) That a fingerprint examiner could have or would have reached such a result is speculative and conclusory and fails for these reasons alone. For all these reasons, any argument that counsel should have called to the stand the law enforcement personnel who took Petitioner's fingerprints must also fail.

the loan officer involved in the execution of the loan.  As explained below, this claim, and any permutation of this claim, must fail.

More specifically, the Government called SunTrust's security manager William Galipeau to testify to the loan application process and to act as a custodial witness for the loan application. (Trial Tr., Dec. 15, 2009 (Doc. 41) at 37-73.) On cross-examination, Galipeau testified that the relationship manager for the loan application was Jean Lassiter while the application had been taken by an employee who was no longer employed by the bank. (Id. at 83.) Galipeau testified that the employee ID number of this bank officer no longer existed as the officer was no longer an employee of the bank. (Id.) Galipeau did not identify the bank officer who took the loan. (Id. at 85.)

Yet, on redirect Galipeau identified the officer who took the loan, whose name appeared on the loan application, Exhibit 1A. (Id. at 90-91.) A Jason McCord is listed on the loan application as the branch contact. (Respondent's Resp., Attach. B, Ex. 01A (marked as JA 245) (Doc. 64-2).) Further, the Government also introduced the approval letter for the line of credit that was sent by SunTrust to Petitioner's home address. (Id., Ex. 01B (marked as JA 246); Trial Tr., Dec. 15, 2009 (Doc.

41) at 52-53, 60.) McCord's name also appears on this letter as the contact for SunTrust. (Respondent's Resp., Attach. B, Ex. 01B (marked as JA 246) (Doc. 64-2).)

Petitioner's argument that he was harmed in his effort to conduct a "shifting the blame" defense by the supposed failure of the Government to reveal that SunTrust Bank had made no effort to identify the bank officer who took the loan is without any merit. First, Petitioner does not contend that the Government did not turn over the loan application and approval letter which indicated the identity of the bank officer. This information allowed Petitioner to pursue his "blame shifting defense."  However, it appears Petitioner directed his attorney to place the blame on Suttle, not the officers listed on the loan documents.

Further, the fact that a custodial witness for the bank had not personally investigated the identity of the bank officer who took the loan does not mean that the Government failed to turn over exculpatory information that SunTrust Bank had made no effort to identify the bank officer.  In fact, the SunTrust records provided did in fact provide this information to Petitioner. Further, counsel cross-examined Galipeau on this point and presented to the jury that Galipeau had not investigated the identity of the officer who had taken the loan.

Consequently, Petitioner has failed to set forth any <u>Brady</u> violation.  Petitioner has also failed to demonstrate any likelihood that counsel's performance regarding the use of discovery material exceeded the wide range of professionally competent assistance.

### Ground Five - Galipeau

Petitioner's fifth claim for relief also relates to Galipeau. (Motion to Vacate (Doc. 54) at 22.)  Petitioner asserts upon "information and belief" that Galipeau had in fact identified the bank officer who had taken the loan and testified falsely to the contrary. (<u>Id.</u> at 23-24.)  Petitioner claims to have discovered this fact post-trial in communication with a "certain officer no longer employed by SunTrust Bank" whom Petitioner does not identify.  (<u>Id.</u>) Based on this unsupported assertion, Petitioner next concludes that the Government, again "upon information and belief," knew or should have known that Galipeau had testified falsely about his efforts to identify the officer.  (<u>Id.</u>)  This claim is vague, conclusory, speculative, and unsupported and fails for all these reasons. And, as noted, Petitioner has also failed to demonstrate any likelihood that counsel's performance regarding the use of discovery material exceeded the wide range of professionally competent assistance.

## Additional Arguments

Petitioner further claims in an affidavit attached to his Motion that counsel never told him that he had a constitutional right to testify. (Motion to Vacate (Doc. 54) at 27.) However, counsel indicates in his affidavit that he informed Petitioner of this right and he also points to the fact that he filed a motion requesting that the Government be barred from impeaching Petitioner with certain unrelated drug convictions. (Motion in Limine (Doc. 8); Respondent's Resp., Attach. A (Doc. 64-1) at 3-4.) Petitioner was in court when this motion was denied on December 15, 2009, and would therefore have been aware of his right to testify at trial. (Id., Attach. A at 4; Trial Tr., Dec. 15, 2009 (Doc. 41) at 1, 4-8.) In fact, at trial, Petitioner was also informed of his right to testify, admitted he had discussed the matter with counsel, and declined to testify. (Trial Tr., Dec. 16, 2009 (Doc. 42) at 142.) Additionally, after the court's denial of the motion to exclude, it was counsel's judgment that it would have been harmful, rather than helpful, if Petitioner testified. (Respondent's Resp., Attach. A (Doc. 64-1) at 4.) Petitioner's claim that he was unaware that he could testify at trial fails in every respect.

Last, Petitioner has also failed to meaningfully demonstrate that for but for counsel's advice not to testify, the results of trial would have been different. First, Petitioner would have been impeached with his prior convictions for drug offenses. Second, he would have been confronted on cross examination with the incriminating fact that he had received the proceeds of the loan he had denied taking out. It is thus extremely unlikely that his testimony would have changed the results of the trial.

**CONCLUSION**

In sum, Petitioner fails to demonstrate either prong of Strickland for any of his claims and fails further to demonstrate any likelihood of prosecutorial misconduct or judicial error. All Petitioner's claims lack merit, his 2255 motion should be denied, and this matter should be dismissed. An evidentiary hearing is unwarranted. Petitioner's motion seeking to exceed the number of pages he may include in his Reply is granted. (Doc. 68.) Accordingly, the court has considered all of Petitioner's pleadings, all of his grounds for relief, and all of his arguments, and concludes that none of them have merit.

**IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 54) is **DENIED** and that this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Leave to Exceed Page Limit (Doc. 68) is **GRANTED.**

A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is not issued.

This the 14th day of November, 2014.

_____
United States District Judge